IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**SHERMAN OBY**                                                                                  **PLAINTIFF**

**V.**                           **CIVIL ACTION NO.: 4:14cv45-SA-JMV**

**OFFICER SANDER, ET AL.**                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff Sherman Oby, an inmate proceeding *pro se* and *in forma pauperis*, filed suit under 42 U.S.C. § 1983 against the following defendants, alleging that they were involved in an incident where the plaintiff was subjected to the use of excessive force: Raman King, Cedric Minton, James Webb, Corey Sanders[1], and Alphonzo Williams.[2] Plaintiff, Defendant Raman King, and Defendant Cedric Minton have each moved for summary judgment under Federal Rule of Civil Procedure 56. Having reviewed the submissions and arguments of the parties, as well as the applicable law, the Court finds that the defendants' motions should be granted and the plaintiff's denied, for the reasons that follow.

### Plaintiff's Allegations & Background Facts

Sherman Oby, an inmate in the custody of the Mississippi Department of Corrections

---

[1] Oby initially identified Corey Sanders as "Officer Sander."

[2] The Court notes that after exhausting his administrative remedies, Oby filed the instant suit but was unable to fully identify all of the intended defendants. Counsel for MDOC later filed a notice identifying Winfred Lunford, Raman King, Cedric Minton, and James Webb as the officers responsible for transporting Oby to a holding cell on August 18, 2013. *See* ECF No. 34. Thereafter, Cedric Minton and James Webb were added as defendants in this action. *See* ECF No. 59. MDOC subsequently identified Corey Sanders and Alphonzo Williams as the remaining unknown defendants, and they were added to the suit. Wilfred Lunford was initially named as a defendant, but he was dismissed from the suit after the plaintiff stated that Lunford was only intended as a witness. *See, e.g.*, Report and Recommendation, ECF No. 12.

("MDOC"), was housed at the Mississippi State Penitentiary on August 18, 2013. On that date, he received rule violation reports for various disciplinary infractions and was escorted by several officers to a holding cell to await transfer to lockdown. Specifically, Oby contends that Defendants Williams and Sanders were escorting him to the door of the holding cell when Sanders, without provocation, struck him six to eight times on the back and side of the head and pushed him through the doorway. Oby maintains that the other escorting officers failed to intervene and stop Sanders' attack.

Oby states that he received a brief medical evaluation before he entered lockdown a few hours after the alleged assault, and that he asked the evaluating nurse to note in his medical records that he had palpable knots on his head. He maintains that he continued to seek medical treatment for headaches for months after the incident, and that he continues to suffer headaches and psychological trauma as a result of the alleged attack. Oby asks the Court to award him punitive and compensatory damages from Defendant Sanders and that the other officers be suspended without pay for one hour.

**Defendants' Allegations**

Defendants King and Minton maintain that they are immune from liability in this lawsuit. They otherwise argue that the events alleged by Oby did not occur. Rather, they claim, Oby was issued a Rule Violation Report ("RVR") on August 18, 2013, after he threatened an officer and was found in possession of a sharpened instrument. Defendants maintain that other officers intervened, removed the weapon from Oby's possession, and transported him to a holding tank. They claim that Oby was evaluated by medical personnel following the incident, and they allege that the notes from the medical evaluation indicate that he had no apparent injuries at the time.

**Summary Judgment Standard**

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if "its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Celotex*, 477 U.S. at 323. The nonmovant cannot rely upon "conclusory allegations, speculation, and unsubstantiated assertions" to satisfy his burden, but rather, must set forth specific facts showing the existence of a genuine issue as to every essential element of his claim. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citation omitted); *Morris*, 144 F.3d at 380. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no proof is presented, however, the Court does not assume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**I. Defendants' Motions for Summary Judgment**

Defendants King and Minton are sued in this action solely based on the allegation that they failed to intervene when Oby was purportedly attacked by Defendant Sanders. Each has separately moved for summary judgment, but both have asserted the defenses of Eleventh

Amendment immunity and qualified immunity. Therefore, the Court addresses their defenses in the same analysis.

**A. Eleventh Amendment**

Defendants King and Minton each claim that they are entitled to summary judgment in their official capacities, as they are immune from suit pursuant to the Eleventh Amendment to the United States Constitution. The Eleventh Amendment bars suits in federal court by a citizen against his own state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A suit against a state employee in his official capacity is a suit against the office and, as such, is the same as suit against the state itself. *Will v. Michigan, Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). The Mississippi Department of Corrections is an arm of the State of Mississippi and enjoys the same immunity. *See Hines v. Mississippi Dept. of Corrections*, 239 F.3d 366, 2000 WL 1741624 at *4 (5th Cir. 2000).

A state can waive its immunity by consenting to suit against it, and Congress can explicitly revoke a state's immunity. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (noting that "[t]here can be no doubt. . . that suit against [a] State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit"); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (noting that congressional action can abrogate a state's immunity). However, § 1983 does not abrogate the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 341 (1979); *Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1069 (5th Cir. 1981). Mississippi has not consented to the filing of § 1983 suits against it in federal court. *See, e.g., McGarry v. Univ. of Mississippi Med. Ctr.*, 355 F. App'x 853, 856 (5th Cir. 2009) (noting that Mississippi "expressly preserved sovereign immunity to

suit in federal court when it enacted the Mississippi Tort Claims Act"). Accordingly, Defendants King and Minton are entitled to Eleventh Amendment immunity for the plaintiff's claim against them in their official capacities.

**B. Qualified Immunity**

Defendants King and Minton have also asserted the defense of qualified immunity as to the Oby's claims against them in their individual capacities. Qualified immunity protects governmental employees from individual, civil liability as long as their conduct does not violate clearly established constitutional rights of which a "reasonable person would have known." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted). It is a defense that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

An evaluation of the issue of qualified immunity requires courts to conduct a two-pronged test: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right was clearly established at the time of the challenged conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008). Ultimately, qualified immunity is applicable unless "the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Ramirez* (citation omitted). A defendant's actions are deemed "objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known" that the conduct at issue violated clearly established law. *Thompson v. Upshur County Texas*, 245 F.3d 447, 457 (5th Cir. 2001) (citation omitted) (emphasis in original). The sequence of the two-prong inquiry is not mandatory; a court may rely upon either prong of the defense in its analysis. *See, e.g.,*

*Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (citation omitted).

Once qualified immunity has been pleaded by a defendant, the plaintiff bears the burden of rebutting the defense "by establishing that the official's allegedly wrongful conduct violated clearly established law." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2003). This burden does not allow him to "rest on conclusory allegations and assertions," but rather, requires a plaintiff to "demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

Oby's claim is that Defendants King and Minton failed to protect him from harm as he was being assaulted by Defendant Sanders, and that their lack of intervention allowed his injuries. The Court notes that under the Eighth Amendment to the United States Constitution, prison officials have a duty to protect inmates from violence. *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (citation omitted). An officer's liability as a bystander to violence may be established where an officer: (1) knows that another officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. *Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 480 (5th Cir. 2014) (quotation marks omitted); *see also Hale v. Townley*, 45 F.3d 914, 919 (1995) (holding that a critical inquiry in determining bystander liability is "whether [the defendant] had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it"). The bystanding officer's liability is analyzed under a deliberate indifference standard, which requires a plaintiff to demonstrate that the officer actually knew of an excessive risk to the inmate's safety and disregarded that risk. *Longoria*, 473 F.3d at 592 (citation omitted); *see also Johnson v. Johnson*, 385 F.3d 503, 524

6

(5th Cir. 2004) (holding that an official violates the failure to protect under the Eighth Amendment only when the inmate shows that "he is incarcerated under conditions posing a substantial risk of serious harm and that the prison officials acted with deliberate indifference to the inmate's safety").

Records from Oby's MDOC institutional file indicate that Oby was issued a Rule Violation Report ("RVR") on August 18, 2013, after he threatened an officer and was found in possession of a sharpened instrument. *See* ECF No. 49, (hereinafter "King MSJ") Ex. A., pp. 16, 17, 18; ECF No. 94, (hereinafter "Minton MSJ") Ex. 1, pp. 16, 17, 18. Specifically, in an incident report of the event, Officer Myosha Stokes reported that Oby threatened to kill her, and that she observed him with a sharpened instrument. King MSJ, Ex. A., p. 18; Minton MSJ, Ex. 1, p. 18. Officers intervened to subdue Oby, remove the weapon from his possession, and to transport him to a holding tank. *Id*. Oby was evaluated by medical personnel on August 18, 2013, after the alleged incident but before he was placed on lockdown. *See* King MSJ, Ex. A, p. 21; Minton MSJ, Ex. 1, p. 21. Medical notes from that examination do not indicate that Oby had any apparent injury. *See* King MSJ, Ex. A, pp. 19, 21; Minton MSJ, Ex. 1, pp. 19, 21.

By Oby's admissions, the alleged assault by Defendant Sanders occurred as he was going into the doorway of a cell. At his *Spears*[3] hearing, Oby testified that Defendants Williams and Sanders were the officers escorting him up to the door to the holding cell, and that Defendant King was standing back by the desk when Sanders allegedly struck him six to eight times and pushed him through the doorway. *See* ECF No. 11 (audio recorded). Oby maintains that he had no prior altercation with Sanders, and nothing had occurred during the transport that

---

[3] *Spears v. McCotter*, 766 F.2d 179 (5th Cir.1985).

would provoke Sanders. Accepting Oby's allegations as true, they do not rise to the level of deliberate indifference of a known harm as is required to a establish a constitutional violation based on bystander liability, as there is no evidence before the Court that Defendants King or Minton had a reasonable opportunity to perceive that a constitutional violation was taking place and act to prevent it. Therefore, Plaintiff has failed to demonstrate a violation of his constitutional rights by either of these defendants, and they are entitled to summary judgment.

Out of an abundance of caution, the Court also considers the possibility that Oby's allegations could raise a claim against Defendants King and Minton with regard to Oby's transport, and it determines that there is no evidence to suggest that they were objectively unreasonable in the actions taken in moving Oby to the holding cell. Courts considering claims arising out of injuries a prisoner has suffered at the hands of prison guards to ask "whether force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (citations omitted). The competent evidence before the Court demonstrates that Oby was subdued by officers after he was found brandishing a sharpened object and threatening a correctional officer, and that he was transported to a holding cell to await transfer to lockdown for the infraction. There is no evidence before the Court that Defendants King and Minton were objectively unreasonable in their conduct during Oby's transport to the holding cell. They are entitled to summary judgment.

## II. Requested Relief

The Court notes that Oby seeks monetary relief only against Defendant Sanders. He requests that all other defendants be suspended for one hour without pay. Compl. at 5. This Court has no authority to order the suspension of State employees or to require MDOC or its

officials to take any particular disciplinary action, as such an order would "unnecessarily intrude[]" on MDOC's operations and would constitute "an inappropriate use of the court's equity powers." *LaMarca v. Turner*, 995 F.2d 1526, 1543 (11th Cir.1993) (citations omitted). Accordingly, this Court is without authority to order the suspension of the defendants without pay. *See, e.g., Mitchell v. Natchitoches Parish Sheriff Dept.*, No. 14-CV-2534, 2014 WL 5796036, at *2 (W.D.La. Nov. 6, 2014); *Street v. Rodriguez*, No. 12-13995, 2014 WL 840083, at *5 (E.D. Mich. Mar. 4, 2014) (collecting cases). Therefore, even if summary judgment were not appropriate as to Defendants King and Minton, Oby would nonetheless be unable to recover the relief requested against them.

### III. Oby's Motion for Summary Judgment

In his motion for summary judgment, Oby claims that his Administrative Remedy Program forms and his medical records support his claims that he was assaulted by Defendant Sanders without provocation. *See* ECF Nos. 67, 68, Oby's MSJ and Memo. He also claims that there are general issues of material disputed fact in this case, and that the defendants have not proven that they were not responsible for his injuries.

Oby has filed several documents in support of his motion for summary judgment, including: a grievance form where he complained to MDOC personnel of Sanders' alleged assault; a medical record where he sought a medication refill and treatment for a headache on September 28, 2013, allegedly as a result of Sanders' assault; and an affidavit dated November 5, 2014, in which he states that he was assaulted by Sanders without provocation, and that he has suffered physical and psychological injury as a result. *See* ECF No. 68. The instant motion fails to offer any proof as to any of the elements of Oby's claims against any of the defendants that he

9

maintains have liability as bystanders to the alleged assault, including Defendants King and Minton.[4]  Therefore, Oby's motion for summary judgment will be denied.

## Conclusion

For the reasons set forth herein, Oby's motion for summary judgment [ECF No. 67] is **DENIED**, Defendant King's motion for summary judgment [ECF No. 49] is **GRANTED**, and Defendant Minton's motion for summary judgment [ECF No. 94] is **GRANTED**.  Defendants King and Minton are hereby **DISMISSED WITH PREJUDICE** from this action.  A separate judgment in accordance with this Memorandum Opinion and Order will enter today.

**SO ORDERED** this the 23rd day of July, 2015.

                                                         **/s/ Sharion Aycock**
                                                        **U.S. DISTRICT JUDGE**

---

[4] Defendants Sanders and Williams have not yet been served with process.